UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ROBERT DAMPOLO, individually, and
on behalf of all others similarly situated,

    Plaintiff,

v.

CVS PHARMACY, INC., foreign
corporation,

    Defendant.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ROBERT DAMPOLO ("Plaintiff"), individually, and on behalf of all similarly situated persons, by and through the undersigned counsel, hereby files this Class Action Complaint against Defendant, CVS PHARMACY, INC. ("CVS" or "Defendant"), a foreign corporation, and in support thereof, respectfully alleges the following**:**

### Parties

1. At all times material hereto, Plaintiff was and is a resident of Broward County, Florida, over the age of eighteen and otherwise *sui juris*. While living in Florida, Plaintiff purchased the below described product in the class period, and he relied upon representations from CVS regarding the products.

2. At all times material hereto, CVS was and is a for profit corporation, organized and existing under the laws of the State of Rhode Island, conducting substantial and not isolated business activity in the State of Florida, including but not limited to by virtue of owning and operating over 800 pharmacy stores throughout Florida and employing thousands of people in Florida.

**Jurisdiction and Venue**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and most members are citizens of states different from Defendant. This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and various offending transactions occurred in the District.

5. Plaintiff has retained the undersigned law firm to represent him (as well as all those similarly situated) in this action and is required to pay said firm a reasonable fee and costs for its services.

**Nature of Action**

6. This case involves cotton swabs, one of the most curious and bizarre consumer products in the country. Cotton swabs (often referred to as Q-tips, the predominant/top selling cotton swab brand, manufactured by Unilever) were introduced to the public almost 100 years ago with cleaning/removing wax from the ear canal historically being the most common and understood use for the product. Decades of industry marketing taught consumers to use cotton swabs for this purpose and generations of Americans have become accustomed to cleaning out ear wax with a cotton swab.

7. Otolaryngologists across the board agree, though, that the practice of self-cleaning wax from the ear with a cotton swab (or any device for that matter) is dangerous and not medically advised. With sticking anything in the ear and ear canal, there is a very real potential to perforate the ear drum. Further, the process of pushing the cotton swab into the canal can cause wax to impact into the ear. These injuries are not theoretical and are happening more than can be

imagined.  For instance, an estimated **12,500 children per year** are seen in emergency rooms due to ear-related cotton swab injuries.

8. The process of cleaning the inside of the ear is also unnecessary.  The reality is that ear wax inside the ear does not need to be removed under most circumstances as the wax is generally beneficial and self-cleaning.  Most doctors agree that simply wiping wax away from the outside of the ear with a washcloth in the shower is all that is needed to clean the ears; and the common rule of thumb is never put anything smaller than your elbow in your ear.

9. Over time, most cotton swab brands, including Q-tips, started adding warnings to the products to caution against entering the ear canal with the swab.   The current version of Q-tip warning reads:

10. Further, Unilever, in particular, touts that the product has a multitude of household uses – makeup removal, hobbies, etc.  While that may be true, the reality is that the vast majority of cotton swab consumers continue to use the product, in whole or part, for the purpose of cleaning ears. The American Academy of Otolaryngology-Head and Neck Surgery estimates that a shocking **90 percen**t of people use cotton-tipped applicators to wipe out earwax.

11. the current version of the Q-tip warning reads:
    *WARNING:  Do not insert swab into ear canal. Entering the ear canal could cause injury.  If used to clean ears, stroke swab gently around the outer surface of the ear only.  Keep out of reach of children.*

12.

## Class Representation Allegations

13. While discovery is ongoing (and, thus, future amendments may be necessary), Plaintiff seeks to represent a proposed class that may be generally defined as all persons in the United States who purchased Ecstacy Cigarettes (hereinafter the "Offending Products") from May of 2014 to the present.

14. While discovery is ongoing (and, thus, future amendments may be necessary), the approximate size of the proposed class could be in excess of thousands of persons.

15. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: whether CVS should have warned consumers of the dangerous propensities of the Offending Products during the class period; whether CVS wrongfully represented that the Offending Products were safe; and, whether CVS engaged in various failures described below.

16. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased the product in reliance on the representations and warranties described above and below and suffered a loss as a result of that purchase.

17. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action strenuously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

## COUNT I
## Breach of the Implied Warranty of Merchantability

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

18. Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

19. CVS, as marketer, distributor, and/or seller of the Offending Products, impliedly warranted that the Offending Products were reasonably safe for their intended purpose.

20. CVS breached the warranty implied in the contract for the sale of the Offending Products because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because they were toxic and known to cause serious injuries and death. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by CVS to be merchantable.

21. Plaintiff and Class members purchased the Offending Products in reliance upon CVS's skill and judgment and the implied warranties of fitness for the purpose.

22. The Offending Products were not altered by Plaintiff or Class members.

23. The Offending Products were defective when they left the exclusive control of CVS.

24. CVS knew that the Offending Products would be purchased and used without additional testing by Plaintiff and Class members.

25. The Offending Products were defectively designed and unfit for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

26. As a direct and proximate cause of CVS's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Offending Products on the same terms if they had known the true facts that the Offending Products could cause serious injuries and death; (b) they paid a price premium for the Offending Products due to CVS's tacit promises that the products were safe; and (c) CVS's Offending Products did not have the characteristics, ingredients, uses or benefits, as promised.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances as to Defendant CVS.

### COUNT II

**Breach of the Implied Warranty of Fitness for a Particular Purpose**

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

27. Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

28. CVS marketed, distributed, and/or sold the Offending Products with implied warranties that they were fit for their intended purposes in that they were safe and were not known to cause serious injuries or death. At the time that the Offending Products were sold, CVS knew or had reason to know that Plaintiff and Class members were relying on its skill and judgment to select or furnish a product that was suitable for sale.

29. Plaintiff and Class members purchased the Offending Products in reliance upon CVS's implied warranties.

30. The Offending Products were not altered by Plaintiff or Class members.

31. As a direct and proximate cause of CVS's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Offending Products on the same terms if they had known the true facts that the Offending Products could cause serious injuries and death; (b) they paid a price premium for the Offending Products due to CVS's tacit promises that the products were safe; and (c) CVS's Offending Products did not have the characteristics, ingredients, uses or benefits, as promised.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances as to Defendant CVS.

**COUNT III**
**Unjust Enrichment**

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

32. Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

33. Plaintiff and Class members conferred benefits on CVS by purchasing the Offending Products.

34. CVS has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the Offending Products.  Retention of those moneys under these circumstances is unjust and inequitable because CVS misrepresented that the Offending Products were safe and not likely to cause serious injuries or death.  These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the Offending Products if the true facts were known.

35. Because CVS's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, CVS must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances as to Defendant CVS.

**COUNT IV**
**Negligent Misrepresentation**

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

36. Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

37. As discussed above, CVS misrepresented that the Offending Products were reasonably safe for their intended purpose.  CVS had a duty to disclose that this was false and that the Offending Products had the propensity for causing serious injuries or death.

38. At the time CVS made these representations, CVS knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

39. At an absolute minimum, CVS negligently misrepresented and/or negligently omitted material facts about the Offending Products.

40. The negligent misrepresentations and omissions made by CVS, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Offending Products.

41. Plaintiff and Class members would not have purchased the Offending Products if the true facts had been known.

42. The negligent actions of CVS caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances as to Defendant CVS.

**COUNT V**
**Fraud**

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

43. Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

44. As discussed above, CVS provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the Offending Products, including but not limited to the fact that the Offending Products were incredibly toxic and likely to cause serious injuries or death. These misrepresentations and omissions were made with knowledge of their falsehood.

45. The misrepresentations and omissions made by CVS, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the Offending Products.

46. CVS's fraudulent actions caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

47. WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances as to Defendant CVS.

## COUNT VI
### Violation of Florida's Unfair and Deceptive Trade Practices Act

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

48. This is an action based on CVS's intentional and unfair deception of consumers in Florida and throughout the United States.

49. By its unfair and deceptive conduct (as more fully alleged hereinabove), CVS has unreasonably grossed profited by deceiving the public and pawning of ultra toxic and dangerous products as being safe.

50. Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA") was passed by the Florida Legislature in 1973 for the purpose of modernizing law governing consumer protection, unfair methods of competition, and unconscionable, deceptive and unfair trade practices, and to protect the consuming public and legitimate businesses from those who engage in unfair methods of competition.

51. FDUTPA ensures that Florida consumer protection is consistent with the

established policies of Federal consumer protection laws. To that end, in addition to generally prohibiting "unfair methods of competition" and "unconscionable, unfair or deceptive acts," FUDTPA specifically gives "great weight" to the interpretations of the Federal Trade Commission Act by Federal Courts and the Federal Trade Commission.

52. CVS marketed, and sold to the general public the Offending Products, as being safe and reasonable to use as consumer products.

53. This is an unfair trade practice, in violation of Federal consumer protection laws, and FDUTPA.

54. CVS's unfair and deceptive trade practices are the direct cause of damage to the Plaintiff, and to all persons similarly situated.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances as to Defendant CVS.

### Demand for Jury Trial

Plaintiff, individually, and on behalf of all those similarly situated, hereby demands a jury trial on all issues triable by jury.

Dated this 30th day of May, 2019.

                                                    Respectfully submitted,

                                                    SALPETER GITKIN, LLP
*Attorneys for Plaintiff*
One East Broward Boulevard
Suite 1500
Fort Lauderdale, FL 33301
Telephone:  (954) 467-8622
Facsimile:  (954) 467-8623

                                          By: */s/ James P. Gitkin*

James P. Gitkin, Esq.
Fla. Bar No. 570001