UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)

CASE NO.: 0:22-cv-61244-RAR

ROBERT DAMPOLO, individually, and
on behalf of all others similarly situated,

      Plaintiff,

v.

CVS PHARMACY, INC., a foreign corporation,

      Defendant.

_____/

## CORRECTED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, ROBERT DAMPOLO ("Plaintiff"), individually, and on behalf of all similarly situated persons, by and through the undersigned counsel, hereby files this Corrected Class Action Complaint and Demand for Jury Trial against Defendant, CVS PHARMACY, INC. ("CVS" or "Defendant"), a foreign corporation, and in support thereof, respectfully alleges the following:

### Parties

1.     At all times material hereto, Plaintiff was and is a resident of Broward County, Florida, over the age of eighteen and otherwise *sui juris*. While living in Florida, Plaintiff purchased the below described product in the class period and he relied upon representations from CVS regarding the product.

2.     At all times material hereto, CVS was and is a for profit corporation, organized and existing under the laws of the State of Rhode Island, conducting substantial and not isolated business activity in the State of Florida, including but not limited to by virtue of owning and operating over 800 pharmacy stores throughout Florida and employing thousands of people in Florida. CVS is the largest pharmacy chain in the country and #4 on the Fortune 500.

**Jurisdiction and Venue**

3.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and most members are citizens of states different from Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

4.       Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District and various offending transactions occurred in the District.

5.       Plaintiff has retained the undersigned law firm to represent him (as well as all those similarly situated) in this action and is required to pay said firm a reasonable fee and costs for its services.

**Nature of Action**

6.       This case involves cotton swabs, one of the most curious and bizarre consumer products in the country.  Cotton swabs (often referred to as Q-tips, the predominant/top selling cotton swab brand, manufactured by Unilever) were introduced to the public almost 100 years ago. As most people know, the swab typically consists of two small wads of cotton wrapped around the ends of a short/thin rod made of wood, rolled paper, or plastic.  Since the inception of cotton swabs, cleaning/removing wax (known medically as cerumen) from the ear canal has been the most common and understood use for the product.  Decades of industry marketing taught consumers to use cotton swabs for this purpose and generations of Americans have become accustomed to cleaning out ear wax with a cotton swab.

7.       Otolaryngologists across the board agree, though, that the practice of self-cleaning wax from the ear with a cotton swab (or any device for that matter) is dangerous and not medically

advised.  The American Academy of Otolaryngology-Head and Neck Surgery has specifically listed cotton swabs as an "inappropriate or harmful intervention" in its 2008 guidelines[1]; and the American Academy of Family Physicians and the American Association of Pediatrics concur that cleaning ears with cotton swabs is not medically reasonable.

8.      With sticking anything in the ear and ear canal, there is a very real potential to perforate the eardrum, known medically as a tympanic membrane perforation (TMP), which can lead to facial paralysis, vertigo, and hearing loss.  Even without perforation, the process of placing a cotton swab in the ear can create enough pressure to rupture the eardrum.  Further, pushing the cotton swab into the canal can cause wax/cerumen impaction by pushing the cerumen further down the ear canal – this makes it more and more difficult for the wax to be removed naturally and can ultimately cause discomfort, hearing loss, tinnitus, dizziness, and chronic cough.

9.      These injuries are not theoretical and are happening more than can be imagined. For instance, an estimated **12,500 children per year** are seen in emergency rooms due to ear-related cotton swab injuries; thousands of people are treated for TMP with the leading cause being the use of a cotton swab; and impacted cerumen removal is the most common ear, nose and throat procedure performed by ENTs.

10.      Additionally, using cotton swabs leads to what doctors refer to as the itch-scratch cycle.  Sticking the swabs in the ear canal dries out the canal, and can also cause small cuts, creating an itchy sensation, which then triggers a person to want to use the cotton swabs even more – an endless path of cotton swab use that starts with cleaning the ears with a cotton swab.

11.      The reality is that the process of cleaning the inside of the ear is completely

---

[1] https://www.washingtonpost.com/news/wonk/wp/2016/01/20/we-have-a-q-tips-problem/

unnecessary as per the otolaryngological guidelines.  The wax inside the ear does not need to be removed under most circumstances as it is generally beneficial and self-cleaning.  Cerumen is produced by glands in the outer ear canal that protects the skin inside the ears, serves beneficial lubrication and cleaning functions, and provides protection from small particles, bacteria, fungi, insects, and water (preventing from reaching and damaging the eardrum).  The skin in the ear canal naturally grows in an outward spiral pattern and as it slips off, ear wax goes with it, naturally discharging or being absorbed in the body.

12.     Most doctors agree that simply wiping excess wax away from the outside of the ear with a washcloth is all that is needed to clean the ears; and the common rule of thumb, as urged by the major applicable medical societies, is never put anything **smaller than an elbow** in or around your ear.

13.     Over time, most cotton swab brands, including Q-tips, started adding warnings to the products to caution against entering the ear canal with the swab.   The current version of the Q-tip warning reads:



14.     CVS does a robust private label business, selling around 7,000 SKUs, many under the label, CVS Health.  As part of its suite of products, CVS sells cotton swabs in a few product container variations which accommodate for the number of swabs sold.  One such cylindrical

container, holding 200 swabs, contains the following warning (hereinafter, "Warning 'A'") (near

identical to the Q-tip warning):



15.     CVS also sells 375 swabs in the classic-looking clear box with a cardboard backing

design (the "subject product").   Through information and belief, this version is sold annually far

more than any of the other packaging sizes/variations.   Strangely, the warning on this box

(hereinafter, "Warning 'B'") simply reads:



16.     Warning 'B' has several significant flaws.   Most notably, it lacks the greater detail

and specificity, including the warning regarding entering the ear canal, CVS thought appropriate to utilize on the **identical products** containing Warning 'A'.

17.     As striking, the phrase, "**WHEN** CLEANING EARS, USE IN **OUTER EAR ONLY!**" (emphasis added) is completely erroneous.  The use of the word, "when," essentially invites the consumer to clean the ears with a cotton swab; and as demonstrated in the chart below, 'outer ear' is an anatomical term for the portion of the ear that extends **all the way into ear canal and up to the ear drum**.  The 'warning', read in its totality, is encouraging consumers to use the product in a manner that clearly violates the medical guidance and is likely to cause injuries.



*See* https://www.nidcd.nih.gov/health/how-do-we-hear.

15.     There is no doubt that this warning is impacting a large number of consumers.  In

2018 alone, private label cotton swab sales amounted to over $109M; and with CVS being a behemoth in the pharmacy space, it is likely that a very large swath of those sales were from the CVS Heath brand.  Moreover, while cotton swab manufacturers tout that the product has a multitude of household uses – makeup removal, hobbies, etc. – the reality is that the vast majority of cotton swab consumers continue to use the product, in whole or part, for the purpose of cleaning ears. The American Academy of Otolaryngology-Head and Neck Surgery estimates that a staggering **90 percen**t of people use cotton-tipped applicators to wipe out earwax.

18.     At its best, CVS made a mistake in its packaging which is, nonetheless, causing consumers to be deceived about the proper uses for its cotton swabs.  At its worst, though, CVS surreptitiously kept the warning for its highest selling cotton swab packaging vague as there is no doubt that the lion's share of the revenue generated from this product is from sales to consumers cleaning ears with a cotton swab.

19.     On May 23, 2022, Plaintiff purchased the subject product, utilizing his CVS ExtraCare Card, from the CVS store located at 70 N University Drive, Pembroke Pines, Florida 33024.  At all times relevant, he read, reviewed, and relied upon Warning 'B' in deciding to purchase the subject product and made the purchase for the specific purpose of cleaning his ears.

**Class Representation Allegations**

20.     Plaintiff seeks relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and/or (c)(4), Plaintiff seeks certification of a Nationwide class defined as follows:  all persons in the United States who purchased the subject product from May of 2017 to the present.

21.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and/or (c)(4), and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims under the laws of

Florida, and on behalf of similarly situated persons, defined as follows: all persons residing in Florida who purchased the subject product from May of 2017 to the present.

22.     Excluded from each of the above Classes are any of Defendant's officers, directors and board members; all persons who make a timely election to be excluded from the Class; and the judges to whom this case is assigned and their immediate family.

23.     Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

24.     Each of the proposed Classes meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

25.     <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1).  Consistent with Rule 23(a)(1), the members of the Classes are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes the proposed Classes comprise millions of members. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

26.     <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3).  Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include, but are not limited to, the adequacy of Warning 'B', the reliance on the warning by the Class members, and the damages suffered by the Class members.

27.     <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3).  Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of those of the other Class members.  Plaintiff's damages and injuries

are akin to the other Class members and Plaintiff seeks relief consistent with the relief of the Classes.

28.     <u>Adequacy</u>. Fed. R. Civ. P. 23(a)(4). Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Classes because Plaintiff is a member of the Classes and is committed to pursuing this matter against Defendant to obtain relief for the Classes.  Plaintiff has no conflict of interest with the Classes. Plaintiff's Counsel are competent and experienced in litigating class actions, including consumer litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Classes.

29.     <u>Superiority</u>. Fed. R. Civ. P. 23(b)(3).  Consistent with Fed. R. Civ. P. 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

30.     <u>Injunctive and Declaratory Relief</u>. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through uniform conduct, has acted or refused to act on

grounds generally applicable to the Classes as a whole, making injunctive and declaratory relief appropriate to the Classes as a whole.

31.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

32.     Finally, all members of the proposed Classes are readily ascertainable by records maintained by Defendant, particularly to the extent that purchases were made through the CVS rewards program.  Using this information, the members of the Classes can be identified, and their contact information ascertained for purposes of providing notice to the Classes.

<div align="center">

**COUNT I**
**<u>Breach of Express Warranty</u>**

</div>

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

33.     Plaintiff brings this claim individually and on behalf of the proposed Classes against CVS.

34.     CVS, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the subject product is safe and appropriate to use for cleaning ears and particularly in the outer ear.

35.     In fact, the subject product should never be used for cleaning ears and should not be used in the outer ear.

36.     As a direct and proximate cause of CVS's breach of express warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the subject product had they been adequately informed about the proper uses for the subject product; (b) they paid a price premium for the subject product due to CVS's  promises that the subject

product was safe and intended for use in cleaning the ears; and (c) the subject product did not have the characteristics, uses or benefits, as promised.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

<div align="center">

**COUNT II**
**<u>Breach of the Implied Warranty of Merchantability</u>**

</div>

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

37.     Plaintiff brings this claim individually and on behalf of the proposed Classes against CVS.

38.     CVS, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the subject product is safe and appropriate to use for cleaning ears and particularly in the outer ear.

39.     CVS breached the warranty implied in the contract for the sale of the subject product because it could not pass without objection in the trade in light of the product warning, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the subject product lacked a fair, adequate, and reasonable warning.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by CVS to be merchantable.

40.     Plaintiff and Class members purchased the subject product in reliance upon CVS's skill and judgment and the implied warranties of fitness for the purpose.

41.     The subject product was not altered by Plaintiff or Class members.

42.     The subject product was defective when it left the exclusive control of CVS.

43.     CVS knew that the subject product would be purchased and used without additional testing by Plaintiff and Class members.

44.     The subject product was designed and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

45.     As a direct and proximate cause of CVS's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the subject product had they been adequately informed about the proper uses for the subject product; (b) they paid a price premium for the subject product due to CVS's  promises that the subject product was safe and intended for use in cleaning the ears; and (c) the subject product did not have the characteristics, uses or benefits, as promised.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

**COUNT III**
**Breach of the Implied Warranty of Fitness for a Particular Purpose**

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

46.     Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

47.     CVS marketed, distributed, and/or sold the subject product with implied warranties that they were fit for the intended purpose of cleaning ears and particularly in the outer ear.  At the time that the subject product was sold, CVS knew or had reason to know that Plaintiff and Class

members were relying on its skill and judgment to select or furnish a product that was suitable for sale.

48.     Plaintiff and Class members purchased the subject product in reliance upon CVS's implied warranties.

49.     The subject product was not altered by Plaintiff or Class members.

50.     As a direct and proximate cause of CVS's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the subject product had they been adequately informed about the proper uses for the subject product; (b) they paid a price premium for the subject product due to CVS's  promises that the subject product was safe and intended for use in cleaning the ears; and (c) the subject product did not have the characteristics, uses or benefits, as promised.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IV
## Unjust Enrichment

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

52.     Plaintiff and Class members conferred benefits on CVS by purchasing the subject product.

53.     CVS has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the subject product.  Retention of those moneys under these circumstances is unjust and inequitable because CVS misrepresented that the subject product was intended for cleaning ears and particularly the outer ear.  These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the subject product if the true facts were known.

54.     Because CVS's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, CVS must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT V
## Negligent Misrepresentation

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

55.     Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

56.     As discussed above, CVS misrepresented that the subject product was safe and appropriate for cleaning ears and particularly the outer ear.  CVS had a duty to disclose the truth about the safe and appropriate uses for the subject product.

57.     At the time CVS made these representations, CVS knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

14

58.     At an absolute minimum, CVS negligently misrepresented and/or negligently omitted material facts about the subject product.

59.     The negligent misrepresentations and omissions made by CVS, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the subject product.

60.     Plaintiff and Class members would not have purchased the subject product if the true facts had been known.

61.     The negligent actions of CVS caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VI
## Fraud

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the proposed Class against CVS.

63.     As discussed above, CVS provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the subject product, including but not limited to the safe and appropriate uses for the subject product.   These misrepresentations and omissions were made with knowledge of their falsehood.

64. The misrepresentations and omissions made by CVS, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the subject product.

65. CVS's fraudulent actions caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

**COUNT VII**
**Violation of Florida's Unfair and Deceptive Trade Practices Act**

Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 32 above as though fully set forth herein.

66. This is an action based on CVS's intentional and unfair deception of consumers in Florida and throughout the United States.

67. By its unfair and deceptive conduct (as more fully alleged hereinabove), CVS has unreasonably grossed profits by deceiving the public about the safe and adequate uses of the product.

68. Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA") was passed by the Florida Legislature in 1973 for the purpose of modernizing law governing consumer protection, unfair methods of competition, and unconscionable, deceptive and unfair trade practices, and to protect the consuming public and legitimate businesses from those who engage in unfair methods of competition.

69. FDUTPA ensures that Florida consumer protection is consistent with the

16

established policies of Federal consumer protection laws. To that end, in addition to generally prohibiting "unfair methods of competition" and "unconscionable, unfair or deceptive acts," FDUTPA specifically gives "great weight" to the interpretations of the Federal Trade Commission Act by Federal Courts and the Federal Trade Commission.

70.     Labels on products for must be strictly accurate and warnings must truly and accurately state the risks associated with use of the product. This goes beyond prohibitions against false advertising, and labeling is required to have a higher degree of truth and accuracy any advertisement.

71.     Federal law strictly prohibits any inconsistency between the label on a product and the actual contents of the product.  Any such inconsistency is an unfair trade per se, and a violation of 15 U.S.C. § 45, the Federal Trade Commission Act.

72.     In this case, CVS marketed, and sold to the general public the subject product, the labels of which clearly stated that the subject product was safe and appropriate for cleaning ears and particularly in the outer ear – these representations were false and in contravention of the medical recommendations.

73.     This is an unfair trade practice per se, in violation of Federal consumer protection laws, and FDUTPA.

74.     CVS's unfair and deceptive trade practices are the direct cause of damage to the Plaintiff, and to all persons similarly situated.

WHEREFORE, Plaintiff, and all those similarly situated, respectfully request that this Court: (a) certify a class of all similarly situated persons; (b) award Plaintiff, and all those similarly situated, damages, costs, interest, injunctive relief, reasonable attorneys' fees and costs; and (c) for such other and further relief as this Court deems just and proper under the circumstances.

**Demand for Jury Trial**

Plaintiff, individually, and on behalf of all those similarly situated, hereby demands a jury trial on all issues triable by jury.

Dated this 30th day of June, 2022.

<div style="margin-left:40%">

Respectfully submitted,

By:    */s/ James P. Gitkin*
James P. Gitkin, Esq.
Fla. Bar No. 570001
*jim@salpetergitkin.com*
**SALPETER GITKIN, LLP**
3864 Sheridan Street
Hollywood, FL 33021
Telephone: (954) 467-8622
Facsimile: (954) 467-8623
***Attorneys for Plaintiff***

</div>